UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LARRY D. PAUL

VERSUS

WESTERN AUTO SUPPLY CO., ET AL

CIVIL ACTION

NO. 06-267-JJB-CN

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the court on two motions for summary judgment: one filed by the defendant, Western Auto Supply ("Western Auto") (doc. 25); the other filed by the plaintiff, Larry D. Paul. (Doc. 28). Both parties have filed opposition memoranda to each other's motions. (Docs. 33, 34). The defendant has filed a reply brief. (Doc. 35). There is no need for oral argument. Jurisdiction is based on 28 U.S.C. § 1331.

### Plaintiff's Claims

The plaintiff, Larry D. Paul, seeks a summary judgment determination that he was a one time employee of Western Auto from 1968 to 1978. As a result of that employment, he claims entitlement to retirement benefits allegedly accrued under Western Auto's Employees' Retirement Plan established on January 1, 1946.

### Defendant's Claims

The defendant seeks summary judgment to dismiss the plaintiff's indirectly asserted claims for breach of contract and negligent misrepresentation based on a telephone conversation plaintiff allegedly had with a Western Auto representative.

1

Western Auto claims that Mr. Paul cannot produce evidence of a contract for retirement benefits between himself and Western Auto and cannot fully satisfy the elements of a claim for negligent misrepresentation. Additionally, Western Auto claims that Mr. Paul's reliance upon an amended 1985 Western Auto Retirement Plan is misplaced because it did not take effect until after Mr. Paul left the company and that it applies only to employees whose employment terminates on or after January 1, 1985—well after his employment ended.

## **Undisputed Facts**

Mr. Paul was born on October 31, 1949. He worked at Western Auto from 1968 though November 17, 1978. He sustained a knee injury in 1978 which occurred within the course and scope of his employment. As a result, he stopped working. Western Auto paid workers' compensation benefits to Mr. Paul between the date of his injury in 1978 through September 1980. His employment relationship with Western Auto terminated following settlement of his workers' compensation claim in 1980.

Following the termination of his employment, Mr. Paul contacted an unidentified person answering phones for Western Auto in Kansas to inquire about retirement benefits. The phone call took place sometime in 1980 or 1981 (first communication). The phone representative allegedly told him that retirement benefits were not available until he was 55- years-old and disabled or 62-years-old. While details of the almost 30-year-old phone conversation are sparse, Mr. Paul never

2

followed up with anyone at Western Auto regarding the information he learned in the call, and no one from Western Auto ever told Mr. Paul that he was actually eligible for benefits under any retirement plan. As noted below Mr. Paul did not contact Western Auto again until 2005. (second communication).

Between 1986 and 2005, Mr. Paul worked for Dyn McDermott, a contractor for the Department of Energy. During that 19-year span of employment, Mr. Paul contributed to that company's 401(k) plan, received training on investing in the plan, and received periodic statements relating to his retirement plan under McDermott's employ.

When Mr. Paul became disabled again in 2005, he called Western Auto to inquire about receiving retirement benefits. He provided the company with his name and social security number, but the company could find no record of his employment. During that phone conversation, Mr. Paul learned that New York Life Investment Management, LLC ("New York Life") now handled the Western Auto Retirement Plan, so he contacted them. In the course of that phone conversation, a New York Life representative told him that they had no record of a retirement benefit in his name.

This court has seen no records to indicate that Mr. Paul was enrolled in a Western Auto retirement plan. The only records before this court that connect Mr. Paul to Western Auto include (1) a 1980 workers' compensation suit between Mr. Paul and Western Auto; (2) certificates of performance; and (3), Mr. Paul's

3

Case 3:06-cv-00267-JJB-CN    Document 36    08/16/07    Page 3 of 12

deposition testimony.

## **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rule Civ. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id*. The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id*.

Although this Court considers the evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the non-moving party. *Celotex*, 477 U.S. at 322; *see also*, Fed.

4

Rule Civ. P. 56(c).

## Analysis

**I.  Plaintiff's Motion For Summary Judgment as to Employment Status**

The plaintiff's claims for entitlement to retirement benefits are based upon a single assertion that he was at one time an employee of Western Auto for a period of ten years, from 1968 to 1978. Based on the fact that the defendant does not dispute that the plaintiff was a one time employee of Western Auto (doc. 26), the 1980 petition for workers' compensation (doc. 30-2), and the certificates of performance (doc. 30-3), this court recognizes that the plaintiff was indeed an employee of Western Auto. This recognition, however, does not move the plaintiff's argument to a conclusion that his employment alone supports a finding for entitlement to retirement benefits.

Thus, the sole issue remaining for this court is the defendant's motion for summary judgment on the breach of contract and negligent misrepresentation claims.

**II.  Defendant's Motion For Summary Judgment[1]**

    **A.  Sufficiency of Facts Underlying General Claims**

---

[1] This court finds it curious that though this action was removed to federal court pursuant to the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001, *et. seq.* ("ERISA"), neither party has set forth arguments under ERISA in their briefs. ERISA comprehensively regulates all employee welfare and pension benefit plans. It is so comprehensive in its regulation of employee benefit plans that it preempts "any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan." 29 U.S.C. §1444(a). Because neither party has set out an ERISA claim in any of their arguments, this court will not undertake an ERISA analysis for purposes of this ruling.

A plaintiff is required to offer specific facts to establish each element crucial to [his] action "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Joachim v. Babbit*, 60 F.Supp.2d 581, 586 (M.D. La. 1999). Here, the plaintiff has not set forth any legal contention to support his claim for retirement benefits.[2] In his testimony, he concedes that he lacks any documentation supporting his claim for retirement benefits.[3]

The plaintiff here merely alleges that his status as a one-time employee of Western Auto gives rise to a presumption of retirement benefits. He has set forth no evidence that he meets—or ever met— the eligibility criteria under any Western Auto retirement plan. He has failed to produce any witness who could prove that he is actually entitled to receive benefits under any Western Auto retirement plan. He cannot show that Western Auto ever told him that he was eligible for any retirement benefits. He has not produced check stubs or W-2 forms which would indicate whether Western Auto withheld funds for any retirement plan. He has not shown

---

[2]Plaintiff's counsel is strongly admonished to consult Fed. Rule Civ. P. 11 to ensure that:

> the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the...modification, or reversal of existing law or the establishment of new law; the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. Rule Civ. P. 11(b).

[3]Doc. 26 (Exhibit A at 32:08-32:12).

6

Case 3:06-cv-00267-JJB-CN   Document 36   08/16/07   Page 6 of 12

how much money he contributed to any plan, and he has not shown how much money he allegedly should be eligible to receive.

## B. Negligent Misrepresentation

Mr. Paul does not go to great lengths to directly allege negligent misrepresentation on the part of Western Auto. In order to prevail on a negligent misrepresentation claim, Mr. Paul must establish that: (1) Western Auto had a pecuniary interest in the transaction in which putatively false information was provided; (2) Western Auto had a legal duty to supply correct information to him; (3) Western Auto, through failing to exercise reasonable care or competence, breached that duty by giving him material false information; (4) Mr. Paul actually and justifiably relied on the false information and (5) he suffered damage as a result. *Brown v. Forest Oil Corp.*, 29 F.3d 966, 969 (5th Cir. 1994); *Silver v. Nelson*, 610 F. Supp. 505, 521-22 (E.D. La. 1985). This court addresses the third and fourth prongs below.

### 1. Material False Information

By his own testimony, Mr. Paul communicated with Western Auto only two times since the end of his employment with Western Auto. In both the communications, there is no evidence to show that Western Auto misrepresented any facts to Mr. Paul. In the first communication, the unidentified phone representative told him that retirement benefits did not become available until age 55 years with disability or age 62.

In the second communication, the company told Mr. Paul that it could find no

record of his employment. It then referred him to New York Life. The record does not reflect that Mr. Paul received false information. Mr. Paul has also not established that Western Auto ever represented that he had access to funds from a retirement plan. He has not demonstrated any evidence of a misrepresentation to advance an actionable claim. *Marshall v. Circle K Corp.,* 715 F.Supp.1341, 1344 (M.D.La. 1989). There is no genuine issue of material fact as to a material misrepresentation because the evidence is insufficient to advance the existence of one or more essential elements of Mr. Paul's case. *Celotex*, 477 U.S. at 325.

### 2. Justifiable Reliance

Mr. Paul must show that he justifiably relied on Western Auto's alleged misrepresentation in the first communication. There can be no justifiable reliance where the plaintiff's misrepresentation of a statement is based on an unreasonable belief or an "unexpressed assumption." *Anderson v. Heck*, 554 So.2d 695, 705 (La. App. 1 Cir., 1989). Mr. Paul admits that the unidentified Western Auto representative he spoke to never told him that he was owed any money under the company's retirement plans.[4] In that communication, Mr. Paul merely learned of the eligibility requirements, and nothing more.

The plaintiff has not raised a genuine issue of material fact on this prong of a negligent misrepresentation claim.

### C. Breach of Contract

---

[4]Doc. 26 (Exhibit A at 90:21-91:01).

Case 3:06-cv-00267-JJB-CN    Document 36    08/16/07    Page 8 of 12

Mr. Paul bears the burden of proving that a contract existed between the parties in order to recover for breach of contract. In the absence of a contract, a claim for breach of contract cannot be maintained. *Philps v. Berner*, 00-0103 (La. App. 4 Cir. 5/16/01) 789 So.2d 41, 46-47 (2001); *Keller v. Sisters of Charity*, 597 So.2d 1113, 1115-1116 (La. App. 2 Cir. 1992). Mr. Paul has neither testified to the existence of a contract, nor provided any documentary evidence of a contract with Western Auto.

Western Auto's plan document shows that Mr. Paul did not meet eligibility requirements under either of the company's two separate and distinct retirement plans: (1) the Western Auto Profit-Sharing/Thrift Plan ("Profit-Sharing Plan") and (2) the Western Auto Retirement Plan ("Retirement Plan").[5]

The Retirement Plan is a defined benefit plan which pays a monthly benefit to the eligible participant based on his length of service to the company and his earnings. To be eligible for benefits under the Retirement Plan, an employee must be employed for at least ten years and have reached the age of 32 before his employment with Western Auto terminated.[6] The plain meaning of the word "and" lends itself to the conclusion that the employee must meet both criteria for eligibility. Here, Mr. Paul stopped working for Western Auto before he reached the age of 32. He was born on October 31, 1949. His employment terminated when he received

---

[5] Doc 26 (Exhibit C and Summary of Plan terms).

[6] Id.

9

the settlement from Western Auto in September 1980, at the age of 30.

Mr. Paul contends a discrepancy between the Retirement Plan in effect when he worked for Western Auto and an amended 1985 Retirement Plan entitles him to retirement benefits and gives rise to a disputed issue of fact.[7] While both plans specifically state that one would be eligible for a deferred vested retirement allowance at the age of 55 providing that they met certain eligibility requirements, the original plan requires that an employee reach the age of 32 and has completed ten years of service to the company while the 1985 plan sets the age at 28. To support his claim—even though he left the company long before the plan took effect—Mr. Paul relies on Section 4.03 of Western Auto's 1985 Retirement Plan which provides:

> **4.03 Deferred Vested Retirement Allowance**
> (a) A participant who has attained the age 28 and has completed 10 years of vesting service and who, for reasons other than retirement or death, ceases to be employed on or after January 1, 1985 by the Company or an affiliated company, shall be eligible for a deferred vested retirement allowance and shall be designed a former participant.

Section 4.03 is clear. It is unambiguous. An employee is entitled to a deferred vested retirement allowance if he is separated from employment on or after January 1, 1985. The interpretation of an unambiguous contract is an issue of law for the court. *Amoco Prod. Co. v. Texas Meridian Res. Exploration, Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). When the words of a contract are clear and explicit and

---

[7]Doc 34 at 3.

lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code. art. 2046.

Mr. Paul's employment with Western Auto ended in 1978. It was officially terminated following settlement of workers' compensation claims in 1980. His employment ended well before §4.03 went into effect on January 1, 1985, and the plain language of §4.03 does not give rise to a finding in Mr. Paul's favor.

The Profit-Sharing Plan is a defined contribution plan. It allows an employee to contribute a portion of his salary to a retirement account. The record provides no evidence that Mr. Paul ever had an account in the Profit-Sharing Plan, or that any other former Western Auto employee's account in the Profit-Sharing has ever been lost.[8]

### D.  Damages and Prescription

Because this court has determined that Mr. Paul has not set forth sufficient evidence to give rise to a dispute over a genuine issue of material fact for trial, the court need not address whether Mr. Paul has suffered damages or whether his claims are barred by prescription.

---

[8] Doc 26 (Exhibit C).

## Conclusion

Accordingly, the motion by the Defendant for summary judgment (doc. 25) is hereby **GRANTED**. The motion by the Plaintiff for summary judgment (doc. 28) as to his employment is hereby **GRANTED**.

Baton Rouge, Louisiana, this 16th day of August, 2007.

_____
JAMES J. BRADY
UNITED STATES DISTRICT JUDGE

12

Case 3:06-cv-00267-JJB-CN   Document 36   08/16/07   Page 12 of 12